COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| STEVIE LEON STENSON, | § | No. 08-11-00033-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 432nd District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC#1159084D) |
| | § | |

**O P I N I O N**

Appellant, Stevie Leon Stenson, appeals his jury convictions of sexual assault and burglary of a habitation with intent to commit sexual assault. By two issues, Appellant contends that: (1) the trial court erred by failing to include a jury instruction on the voluntariness of statements made by him to police; and (2) improper statements made by the State during closing argument affected his substantial rights. We affirm.

**PROCEDURAL BACKGROUND**

Appellant was indicted for sexual assault and burglary of a habitation with intent to commit sexual assault. Appellant pleaded not guilty to the charges. At trial, a suppression hearing was held outside of the presence of the jury to determine the admissibility of Appellant's oral statements to police. The trial court denied Appellant's motion to suppress and found the statements admissible because they were freely and voluntarily made. The jury found Appellant guilty as indicted. After finding that Appellant had committed previous offenses, the trial court assessed punishment at life imprisonment. This appeal followed.

# FACTUAL BACKGROUND

On the night of August 24, 2008, after taking two sleeping pills, P.H. went to bed in her home in Fort Worth, Tarrant County, Texas. She was awakened later by someone banging on the front door. P.H. testified that she opened the door and recognized Appellant from Heritage Square, an assisted living center near her home where she went to eat dinner sometimes. Appellant asked if he could come inside, to which P.H. responded no and then she went back to sleep.

According to P.H., Appellant returned later and entered her home through her bedroom window. She testified that Appellant held her down by her arms, took off her shorts and underwear, and sexually assaulted her without her consent. During the assault, P.H. received a call from her former roommate which she answered and told him that she could not speak to him at that time. P.H. testified that she was afraid of Appellant because she did not know what he would do. After Appellant left, P.H. called her former roommate and told him that she had been raped; he told her to call the police. P.H. called the police and then an ambulance. Officer Matt Collingsworth went to the hospital to make contact with P.H. When Officer Collingsworth met P.H., she was upset and angry. P.H. gave Officer Collingsworth a description of her assailant and a first name. Officer Collingsworth obtained P.H.'s consent to search her residence. While at the hospital, P.H. also gave a written statement to Detective Kerry Adcock from the Fort Worth Police Department's Special Victims Unit. After the interview, Detective Adcock went to the crime scene and then went to Heritage Square to try to identify the man P.H. had described as her assailant.

Detective Adcock testified that he found a person matching P.H's description at Heritage Square and spoke to him there. In court, Detective Adcock identified Appellant as the person he

met with at Heritage Square. Detective Adcock informed Appellant that he was investigating a sexual assault and that his name and likeness had come up. According to Detective Adcock's testimony, he asked Appellant if he would talk to him, to which he agreed. Appellant was advised that he was not under arrest and that he was free to leave. Detective Adcock asked Appellant if he knew the victim and Appellant responded that he knew her and had seen her both at Heritage Square and at her house as he had walked by there. Detective Adcock then asked Appellant if he had ever been to P.H.'s house, if he'd ever touched her house, and if he had ever had sex with P.H. Appellant answered no to each question. Following this, Detective Adcock asked Appellant if he would be willing to give him a sample of his DNA which Appellant voluntarily agreed to do. Detective Adcock then took a buccal swab from Appellant. Appellant was not arrested at this time.

At P.H.'s residence, Officer Kenneth Robertson testified that there were five windows on the west side of the residence and that four of the five window screens had been removed and placed on the ground. Officer Robertson attempted to lift fingerprints from the window screens and inside the residence. Appellant's fingerprints were found on four window screens of P.H's residence.

At the hospital, P.H. was examined by Betsy Peters, a sexual-assault nurse examiner. During the exam, Peters noted that P.H. had bruising on her upper arms and injury to her vaginal and hymen area. Peters testified that the bruising and injuries were consistent with the history of sexual assault provided by the victim. Peters collected DNA swabs from P.H.'s pelvic area. A serologist from the DPS crime laboratory in Fort Worth testified that the DNA swabs taken from P.H. tested positive for sperm. A forensic DNA analysis of the vaginal swab taken from P.H. and the buccal swab taken from Appellant showed that Appellant could not be excluded as a

3

contributor to the mixed DNA found in P.H.'s vaginal swab.

## DISCUSSION

## Jury Instruction on Voluntariness

In Issue One, Appellant contends the trial court committed reversible error by failing to give the jury an instruction on the voluntariness of his oral statements to police pursuant to Article 38.22, § 6 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005). Appellant acknowledges that no jury instruction was requested, but argues that because the requirements under Article 38.22, section 6 were satisfied, the missing jury instruction was error and he suffered egregious harm as a result. The State responds that no jury instruction on voluntariness was required in this case. Because the statements made by Appellant were non-custodial, there is no evidence raising a question of involuntariness, and because defense counsel's argument is not evidence, no error exists.

### *Standard of Review & Applicable Law*

When a claim of jury-charge error is made we first determine whether error occurred. *Sakil v. State*, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009). If error occurred, we next determine whether sufficient harm exists to require reversal. *Id*. at 25-26. If the defendant failed to request a jury instruction, we review the omission of the instruction under *Almanza's* egregious harm standard. *Oursbourn v. State*, 259 S.W.3d 159, 182 (Tex. Crim. App. 2008), *citing Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Article 38.22, section 6 pertains to the admissibility of an accused's custodial and non-custodial statements and provides that only voluntary statements are admissible at trial. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005); *see Oursbourn*, 259 S.W.3d at 171.

4

The trial court is required to give a general voluntariness instruction to the jury if there is evidence raising the issue of voluntariness of an accused's statement under Article 38.22, section 6, even if an instruction is not specifically requested. *Oursbourn*, 259 S.W.3d at 175-76. When a question is raised and litigated about the voluntariness of a statement made by the accused, Article 38.22, section 6 requires a trial court to: (1) independently determine that the statement was made under voluntary conditions; and then (2) instruct the jury that they shall not consider the statement for any purpose unless they believe, beyond a reasonable doubt, that the statement was voluntary. *Id*. at 180-81. A complaint under Article 38.22, section 6 proceeds as follows: (1) a party notifies the trial court about the issue of voluntariness of the statement or the trial court raises it *sua sponte*; (2) a hearing is held outside the presence of the jury; (3) the trial court determines whether the confession was voluntary and issues written findings of fact and conclusions of law supporting the ruling; (4) if the confession is found to be voluntary, it is admissible, and a party can offer evidence contesting voluntariness; (5) if such evidence is offered before the jury, the trial court must give a voluntariness instruction to the jury. *Id*. at 175. However, a jury instruction on voluntariness is required only if the evidence produced at trial would allow a reasonable jury to conclude that the statement was involuntary. *Vasquez v. State*, 225 S.W.3d 541, 544 (Tex. Crim. App. 2007); *see also Oursbourn*, 259 S.W.3d at 174 (no error occurs if a trial court refuses to include a jury instruction on the voluntariness under Article 38.22 when there is no evidence that raises the issue of voluntariness).

Here, the record does not indicate that Appellant presented any evidence from which a reasonable jury could find that the statements Appellant made to Detective Adcock were involuntary. The voluntariness question was raised outside the jury's presence and as such, no jury instruction is required. *See Oursbourn*, 259 S.W.3d at 175; *Vasquez*, 225 S.W.3d at 545-46.

Accordingly, we hold that the trial court did not err in failing to instruct the jury on the voluntariness of Appellant's statements. Issue One is overruled.

## Improper Jury Argument

In Issue Two, Appellant asserts that three improper remarks made by the prosecution during closing argument affected his substantial rights. Specifically, he contends the prosecutor's closing argument mischaracterized Appellant's closing in such a way that it inflamed and prejudiced the jury against him, it struck at him over the shoulders of defense counsel, and invaded the province of the jury by asserting that a guilty verdict was a foregone conclusion. We address each complaint separately.

### Standard of Review & Applicable Law

We review a trial court's ruling on an objection to a jury argument for an abuse of discretion. *York v. State*, 258 S.W.3d 712, 717 (Tex. App. – Waco 2008, pet. ref'd). Generally, proper jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007); *Underwood v. State*, 176 S.W.3d 635, 639 (Tex. App. – El Paso 2005, pet. ref'd). A trial court has broad discretion in controlling the scope of closing argument. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App. – El Paso 2004, no pet.). When determining whether a party's argument fits into one of these areas, we consider the argument in light of the record as a whole. *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex. App. – El Paso 2001, pet. ref'd).

Generally, improper jury argument can be cured by an instruction to disregard unless "'in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused.'" *Hawkins v. State*, 135 S.W.3d 72, 75 (Tex.

6

Crim. App. 2004), *citing Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). We also consider whether Appellant's substantial rights were harmed by the State's improper argument. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). When an error has a substantial and injurious effect or influence on the jury's verdict an appellant's substantial rights are affected. *Id.*

When closing argument exceeds the permissible bounds of the proper areas, reversible error only exists if, in light of the entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). To rise to this level, the remarks must show a willful and calculated effort on the part of the State to deprive Appellant of a fair and impartial trial. *Id.*

### Preservation of Error

Appellant first complains that the following closing remarks made by the prosecutor mischaracterized defense counsel's argument:

> The State: I want y'all to understand what he just said. She doesn't matter. She's a member of our society who does not matter because we don't approve of her lifestyle. That's what he just said. I want you to understand that, that because of where she lives—

> Defense Counsel: I'm going to object to that characterization. That's not what I said, Judge, and it's not what I meant. It's a mischaracterization of my argument.

> The Court: Ladies and gentlemen, just remember the Court's previous instruction that the arguments of the respective counsel are supposed to help you in identifying evidence that might otherwise escape your attention. What they say is not evidence. You may continue.

The State responds that Appellant did not preserve his complaint for review because he failed to obtain an adverse ruling on his objection. We agree.

7

In order to preserve error, a party must make a timely and specific objection when improper evidence or argument is presented. TEX. R. APP. P. 33.1. To preserve error regarding improper jury argument, a defendant ordinarily should (1) contemporaneously object to the statement; (2) request an instruction that the jury disregard the statement if the judgment is sustained; and (3) move for a mistrial if the instruction is granted. *Cooks v. State*, 844 S.W.2d 697, 727-28 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). Accordingly, in order for an improper jury argument error to be preserved, a party must assert a timely and specific objection to the argument and pursue the objection to an adverse ruling. *Mathis v. State*, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002); *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) (error is waived if it is not clear from the record that the trial court made an adverse ruling on the defendant's objection).

After Appellant objected that the prosecutor mischaracterized his argument, the trial court reminded the jury that closing arguments were meant to aid them in identifying evidence and instructed the jury that the State's argument was not evidence. Although Appellant asserted a timely objection, Appellant acknowledges that the trial court did not rule on his first objection. In this case, the trial court's instructions to the jury after Appellant objected on the grounds of mischaracterization did not constitute an adverse ruling. *See Avendano v. State*, No. 08-06-00072-CR, 2008 WL 2967012, at *3 (Tex. App. – El Paso July 31, 2008, no pet.) (not designated for publication) (argument on appeal waived where appellant failed to obtain adverse ruling to his objection on State's argument); *Carrera v. State*, No. 08-05-00264-CR, 2007 WL 766126, at *4 (Tex. App. – El Paso March 15, 2007, no pet.) (not designated for publication) (a trial court's non-specific comment that "the jury would remember the evidence" does not constitute an adverse ruling on an objection to jury argument). Consequently, Appellant failed to

8

preserve error with respect to his objection that the State's mischaracterized Appellant's closing argument. *Mathis*, 67 S.W.3d at 926-27.

### Striking Appellant over the Shoulders of Defense Counsel

Next, Appellant argues that the State improperly struck Appellant over the shoulders of defense counsel. Specifically, Appellant asserts that the State personally attacked and impugned defense counsel's character by remarking that the victim was chosen because defense counsel could make the jury disregard a victim like her. The State responds that the prosecutor was not attempting to impugn Appellant's counsel by suggesting counsel aided in Appellant's selection of a victim; instead it claims the prosecutor was trying to explain to the jury that Appellant selected P.H. as his victim because: (1) he knew her; (2) she lived in an unsecure home in a crime-ridden area; (3) she was poor and, as such, society would not see her as credible; and (4) Appellant knew a skilled attorney could destroy the credibility of such a victim. For these reasons, the State argues that the prosecutor's argument was a reasonable deduction from the evidence and not an impermissible strike at Appellant over the shoulders of defense counsel. The argument and exchange occurred as follows:

> The State: She's not worked a day in her life, she's been drifting all this time, she lives in a high-crime neighborhood. What does that imply to you? She's a part of our population. Our community does not matter.
>
> She's not worthy of being a victim. We should have a separate justice system for her. We tried that once. It don't work. Justice is blind. Everybody can be a victim.
>
> And don't you think that when this Defendant—and he told the detective that he knew where she lived, that he picked her for a reason. Why? Because Terry's a good lawyer, and everybody knows if you pick a victim that nobody cares about, nothing's going to happen. Why?

9

Defense Counsel: I have to object to that, Judge. What do I have to do with him picking somebody? I'm going to object that it's striking my client over the shoulder of Counsel.

The Court: Sustained.

After sustaining the objection, the trial court instructed the jury to disregard the last comment and denied Appellant's motion for mistrial.

When the trial court sustains an objection, instructs the jury to disregard, and denies the mistrial, the issue on appeal is whether the trial court abused its discretion by denying the motion for mistrial. *Hawkins*, 135 S.W.3d at 79. We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Id*. at 76-77. A mistrial is an extreme remedy for conduct that is so prejudicial that expenditure of further time and expense would be futile. *Id.* at 77. Only in dire circumstances, where the prejudice is incurable, will a mistrial be required. *Id*. In most cases, an instruction to disregard will cure the prejudicial effect. *Wesbrook*, 29 S.W.3d at 115-16; *Wilson v. State*, 7 S.W.3d 136, 148 (Tex. Crim. App. 1999) (when an argument that strikes over the shoulder of defense counsel is not particularly egregious, a trial court's instruction to disregard will usually cure the error).

In reviewing a trial court's denial of a motion for mistrial we look at the following factors to analyze any harm: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Newby v. State*, 252 S.W.3d 431, 438 (Tex. App. – Houston [14th Dist.] 2008, pet. ref'd).

Here, the comments made by the prosecutor referencing Appellant's counsel at trial, were

10

not particularly egregious. Looking at the entire record, we discern no abuse of discretion on the part of the trial court in its denial of Appellant's motion for mistrial. *Hawkins*, 135 S.W.3d at 85. The trial court could have reasonably concluded that: (1) the State's argument was only mildly improper; (2) the court's instruction to disregard would cure any error; and (3) Appellant's conviction was likely absent the improper argument. Therefore, the trial court could have reasonably concluded that a mistrial was not required.

## Invading the Province of the Jury

Lastly, Appellant complains that the prosecutor invaded the province of the jury by asserting that a guilty verdict was a foregone conclusion and that these remarks fall outside the areas of permissible argument. The State responds that the prosecutor's remarks were proper because they constituted both a reasonable deduction from the evidence and a plea for law enforcement. Appellant challenges the following argument:

> The State: I'm asking you to do what is right. I told you during voir dire there's one thing that's never really talked about in trials, and it's not in this court anywhere in here, the instructions. He has a right to a jury trial. We have a right to a jury trial. We have a right to bring cases to you so you can decide them, and that's what happened here.
>
> This evidence is overwhelming. Absolutely overwhelming. The only question is punishment. There's never been a question about guilt/innocence. And the Judge is going to make that decision. Find him guilty.
>
> Defense Counsel: Judge, I object to that, there's never been any question, the Judge is going to decide punishment; that presupposes the verdict of the jury. We're going to object to that.
>
> The Court: Ladies and gentleman, you're ultimately the finders of fact whether the Defendant is guilty or not.
>
> Overruled.

11

The State:   So what kind of community do you want to live in?   Do people like her matter?   If you believe so, then you say guilty on both counts.

Assuming the complained-of comment was improper, we cannot conclude that it was a willful, calculated effort on the part of the prosecutor to deprive Appellant of his substantial rights. *See Wesbrook*, 29 S.W.3d at 115; *see also Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997).   The prosecutor's argument was not extreme or manifestly improper nor did it inject new, harmful facts into the proceeding. *Wesbrook*, 29 S.W.3d at 115.   The prosecutor's remarks merely expressed that the overwhelming evidence supported convicting Appellant of the charged offense and asked that the jury find Appellant guilty.   Moreover, in light of the record as a whole, we cannot conclude that there is a reasonable probability that the prosecution's argument contributed to the jury's conviction of Appellant. *Rodriguez*, 90 S.W.3d at 364; *Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996) (the standard is whether, in light of the entire record, there is a reasonable possibility the improper argument may have contributed to appellant's conviction).   Accordingly, we find that the argument made by the prosecutor during closing argument did not violate Appellant's substantial rights and there was no abuse of discretion on the part of the trial court. *Casey*, 215 S.W.3d at 885; *York*, 258 S.W.3d at 717; *Hawkins*, 135 S.W.3d at 76-77.   Issue Two is overruled.

## CONCLUSION

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

August 15, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)

12